Clair H. Cobleigh v. Commissioner. Ruth L. Cobleigh v. Commissioner.
Cobleigh v. Commissioner
Docket Nos. 49174, 49175.
United States Tax Court
T.C. Memo 1956-261; 1956 Tax Ct. Memo LEXIS 32; 15 T.C.M. (CCH) 1379; T.C.M. (RIA) 56261; November 23, 1956
Robert Lloyd Jeffrey, Esq., 4800 A Street, Lincoln, Neb., for the petitioners. Ivan L. Onnen, Esq., and Stanley E. Jennings, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax against Clair H. Cobleigh, the petitioner in Docket No. 49174, for the years 1946 and 1947 in the sums of $314.28 and $1,817.66, respectively, and against Ruth L. Cobleigh, the petitioner in Docket No. 49175, for the years *33 1946 and 1947 in the sums of $314.28 and $1,817.65, respectively. The issues in these consolidated proceedings are (1) whether the respondent, in recomputing petitioners' income, employing an accrual method instead of the cash method employed by the petitioners, erred in making certain adjustments; (2) whether sums paid by petitioners in connection with services and materials used on a building owned by petitioners represented capital expenditures or repairs, and (3) whether petitioners expended $3,500 from 1938 through 1945 for capital improvements to another building owned by them. Findings of Fact Some of the facts have been stipulated and they are found accordingly. Petitioners are married individuals residing at 4606 Calvert Street, Lincoln, Nebraska. They filed individual income tax returns for the calendar years 1946 and 1947 with the then collector of internal revenue for the district of Nebraska. The petitioners owned, in 1946 and 1947, two buildings which are involved in these proceedings. One is located at 4606 Calvert Street, Lincoln, Nebraska, and will be referred to as the Calvert Street Building. The petitioners reside in this building and also use part of *34 it for business purposes. The other building is located at 3905 South 48th Street, Lincoln, Nebraska, and will be referred to as the 48th Street Building. The petitioners organized the Cobleigh Electric Company, hereinafter referred to as the Partnership, as an equal partnership in 1933 and have operated it as such from that date through the tax years here involved. The Partnership was at all times engaged in the electrical contracting business. The Partnership filed partnership income tax returns on a cash basis for the calendar years 1946 and 1947 with the then collector of internal revenue for the district of Nebraska. Sometime in 1946, the petitioners employed an accountant to set up books of account for the Partnership. Prior to this time, the Partnership had employed the cash method of accounting. The new books of account were set up employing an accrual method but for income tax purposes in 1946 and 1947, the Partnership income was computed and reported on the cash basis. The Commissioner, in recomputing the Partnership income in 1946 and 1947, made certain necessary adjustments so as to properly reflect the Partnership income in the tax years involved employing an accrual *35 method of accounting and reporting income. Each petitioner's distributive share of the Partnership income for the year 1946 was increased in the amount of $1,532.52. This increase was based on additional sales of $5,278.67, the amount of accounts receivable on December 31, 1946 and additional purchases of $2,271.14, the amount of accounts payable on December 31, 1946. For 1947, the petitioners' distributive shares of the Partnership income were increased in the amounts of $3,558.41 and $3,558.42. These increases were based on additional sales of $5,933.80, the increase in accounts receivable from December 31, 1946 to December 31, 1947; additional purchases of $1,528.39, the increase in accounts payable from December 31, 1946 to December 31, 1947; and additional inventory of $2,304.06, which the petitioners had omitted from closing inventory as goods on hand but not paid for. The Commissioner found no accounts receivable, nor accounts payable, on January 1, 1946. Minor adjustments were also made concerning depreciation but these matters are not here in issue. The petitioners purchased a brick and stucco business building in December 1945. This building, which we refer to as the 48th *36 Street Building, was purchased for $14,000. Of the purchase price, $2,000 was allocable to the land and $12,000 was allocable to the building. A grocery store and a confectionery occupied the bottom floor of the building and four apartments occupied the second floor at the time of the purchase. At the time the 48th Street Building was purchased by the petitioners, it was in a dilapidated condition from the roof to the basement. Shortly after taking over the building, cement posts and a cement wall were installed in the basement to prevent the center of the building from sagging further. In the summer of 1946, or a few months after purchase, the petitioners entered into a cost-plus 10 per cent oral contract with a building contractor, R. A. Ristow, to make certain improvements and repairs to the building. The petitioners, during the year 1946, paid to this contractor a total of $2,000 for work done during 1946. All of this amount was deducted by the petitioners in 1946 as repairs expense for income tax purposes. During the year 1947, petitioners paid to the contractor the sum of $8,170.86 for materials and services, all of which related to the 48th Street Building, and a sum of $3,410.87 *37 was paid to others for materials and services, most of which was expended in connection with the same property. Of the foregoing amounts, petitioners deducted $5,883.18 as repairs, all of which was disallowed by the Commissioner. The work performed on the 48th Street Building included building a new addition on the south side of the building, a new cement platform and dock to the rear of the building, a new outside stairway, a new glass brick front to the building, and new tile was laid in part of the building. A new cement floor was put in the basement, screen doors were replaced, gutters were replaced, new doors were installed in front of the building, and new floor joists and flooring were placed in the first floor on the north side of the building. The building was painted in part, the old roof was patched where necessary, and a new roof was placed over the new addition. The construction work on the second floor progressed as each tenant would vacate one of the four apartments. Just as soon as work was completed in one apartment, it would be rented again and workers moved to another of the apartments as they became available. New counter tops were placed in each apartment kitchen, *38 new sinks and lavatories were installed in some of the apartments, and the inside of the exterior walls was furred out and made as moisture proof as possible. On July 1, 1946, the monthly rental income from the grocery and confectionery was $50 and $30, respectively. On and after July 1, 1947, monthly rental income from the grocery was $100 and the monthly rental income from the ice cream parlorcafe, which had replaced the confectionery, was $75. On July 1, 1946, the rental income from the four apartments was $20 each per month, and on and after July 1, 1947, this monthly rental went up to $35 per apartment. The petitioners purchased, in 1938, the building in which they resided and had their place of business during the tax years here involved. This building, which is referred to as the Calvert Street Building, was reported as having cost $4,500. In 1946 and 1947 the petitioners attempted to capitalize "various improvements" in the amount of $3,500 made in the years 1938 through 1945. One-third of the expenses and depreciation attributable to this building is allocable to the business of the Partnership, and the remaining two-thirds is allocable to the personal use of the petitioners. *39 There were no duplications in the Partnership sales for the year 1947, no customers' advance deposits on December 31, 1947, and no bad debts on December 31, 1947. The accounts receivable, accounts payable, and merchandise inventories of the Partnership at the dates set forth below were as follows: Accounts Receivable
January 1, 1946
None
December 31, 1946
$ 5,278.67
December 31, 1947
11,212.47
Accounts Payable
January 1, 1946
$ 1,586.78
December 31, 1946
2,271.14
December 31, 1947
3,799.53
Inventory
January 1, 1946
$ 1,500.00
December 31, 1946
2,700.00
December 31, 1947
6,506.90
The money expended in connection with services and supplies for the 48th Street Building was pursuant to an over-all plan of improvement and none of it is deductible as repairs expense under the provisions of section 23(a)(2), Internal Revenue Code of 1939. The petitioners did not, at various dates from 1938 through 1945, expend the sum of $3,500 for improvements to the Calvert Street Building. Opinion MULRONEY, Judge: There is a procedural question to be resolved before discussing the substantive issues of these consolidated cases. During the trial, *40 the petitioners offered certain evidence pertaining to accounts receivable on January 1, 1946; opening and closing inventories for 1946; opening inventory, bad debts, customers' advance deposits, and duplication of sales for 1947. The respondent objected to the introduction of this evidence, contending that it raised new issues and was outside the scope of the pleadings. We permitted the evidence subject to our later ruling. After all of the evidence was in and both the respondent and petitioners had rested, the petitioners filed a written motion to amend their petitions to conform the pleadings to the proof, filing amended petitions therewith. The respondent objected to themotion to amend as not being timely filed. We also reserved our ruling on this motion. We will assume, without deciding, that the evidence in question was within the scope of the original pleadings. In any event we feel the motion to amend was timely filed, thereby curing any possible defect in the pleadings. See Rule 17(d), Tax Court Rules of Practice. We hold that the evidence in question is of little or no probative value to the petitioners. The first issue in these consolidated cases is whether the Commissioner, *41 in recomputing the petitioners' income for 1946 and 1947 from a cash basis to an accrual basis, erred in making certain adjustments. The petitioners admit that adjustments had to be made. They admit that since books were kept by petitioners employing an accrual method of accounting, income tax returns should have reflected the same method of computing income. The petitioners' objection therefore is not that adjustments were made but that the adjustments made were incorrect in the amounts found by the Commissioner. They also argue that the Commissioner overlooked certain errors in the Partnership books in his recomputation of the Partnership income. All we are asked to decide on this issue is whether or not the petitioners carried their burden of proof and we do not think that they did. Among other things, the petitioners contend that an error in the Partnership books brought about a duplication of reported sales for 1947. They also contend that the Partnership had uncollectible debts in the amount of $1,058.01 on December 31, 1947 and $1,360.09 in customers' advance deposits on the same date resulting in an erroneous computation of reported sales for 1947. These contentions are wholly *42 unsupported by the evidence in the record. We do not think it necessary to dwell upon these contentions as petitioners' testimony purporting to support these contentions was more in the nature of guesses, speculation, and unsupported conclusions than evidence upon which we might base an opinion. Petitioners contend that accounts receivable at January 1, 1946 amounted to $15,952.70. The Commissioner had found no accounts receivable for that date. Again the petitioners have failed to show that the Commissioner erred. The testimony concerning this contention was confusing and conflicting. The so-called lists, or summaries of accounts receivable, in no way identified any account receivable accruing during 1945 so as to be an account receivable on January 1, 1946. Petitioners' arguments concerning accounts receivable on December 31, 1946 and December 31, 1947 were of a similar nature. The Commissioner's determinations were reinforced by the general journal of the Partnership, and an analysis of accounts receivable prepared in 1946 and 1947 by a certified public accountant employed by the petitioners. We think that these contemporaneous records of the Partnership should be afforded more *43 probative weight than a summary of accounts receivable prepared by the petitioners a few weeks preceding the trial of this case from old scratch sheets, adding machine tapes, and other like "records". It was contended by petitioners that the Commissioner erred in his determinations of the Partnership opening and closing inventories for 1946 and the opening inventory for 1947. They contend that the Partnership inventories for those dates, as reflected in the 1946 and 1947 Partnership income tax returns and contemporaneous working trial balances of the Partnership, were in error. They claim that merchandise on hand, but not paid for, was excluded from the opening and closing inventories for 1946, and the opening inventory for 1947, and that all inventory on hand should have been included. We agree that all merchandise whether paid for or not should be included in inventory, but we think that the petitioners have failed to prove that any merchandise was excluded from inventory. The only proof offered by petitioners was that since unpaid-for merchandise was excluded from the closing inventory of 1947, it followed that by using the "rules of consistency" the same thing happened in previous *44 inventories. Needless to say, we attach very little weight to such an argument. Respondent now agrees that the Partnership had accounts payable amounting to $1,586.78 on January 1, 1946 which should have been used in making adjustments in purchases for 1946. Except for this oversight on the part of the Commissioner, we feel that the petitioners have failed to prove that the Commissioner erred in his determinations concerning the amounts of opening and closing accounts receivable, accounts payable, and inventories for 1946 and 1947. We therefore hold that these amounts at the dates set forth below were as follows: Accounts Receivable
January 1, 1946
None
December 31, 1946
$ 5,278.67
January 1, 1947
5,278.67
December 31, 1947
11,212.47
Accounts Payable
January 1, 1946
$ 1,586.78
December 31, 1946
2,271.14
January 1, 1947
2,271.14
December 31, 1947
3,799.53
Inventory
January 1, 1946
$ 1,500.00
December 31, 1946
2,700.00
January 1, 1947
2,700.00
December 31, 1947
6,506.90
The second issue is whether expenditures by petitioners in connection with services and materials used on their 48th Street Building represented capital expenditures *45 or repairs expense. The petitioners contend that of the $13,581.73 expended on this building, $7,883.18 should be charged to repairs expense and the balance to capital improvement. The respondent contends that the whole amount expended should be capitalized as the cost of an over-all plan of renovation, restoration, and permanent improvement of a dilapidated building. Section 23(a)(1)(A), Internal Revenue Code of 1939, allows "All the ordinary and necessary expenses paid * * * during the taxable year in carrying on any * * * business" to be deducted from income for that year. Section 24(a)(2), Internal Revenue Code of 1939, disallows as a deduction from income "Any amount paid out for * * * permanent improvements or betterments made to increase the value of any property * * *." Regulations 111, section 29.23(a)-4, provides that "The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as expense, * * *." We must now determine if the work done on this building can be termed "incidental repairs." We do not think so. The question presented is *46 one of fact, Home News Publishing Co., 18 B.T.A. 1008. If, as is contended by respondent, the work done on this building was pursuant to a general plan of improvement or reconditioning, then all of the expenditures were of a capital nature and not deductible as expense. I. M. Cowell, 18 B.T.A. 997. The petitioners purchased the 48th Street property in December of 1945 at a cost of $14,000, of which $12,000 was allocable to the building. While the petitioners testified, in answer to a direct question, that the building was in a pretty good state of repair when purchased, they also testified as to its condition when work was commenced a short time later. They stated that the outside stairway was in bad shape, the center of the building from the basement to the roof was sagging, the basement floor was cracked, the roof had bubbled up and was leaking, the gutters were badly rusted out, the tile on the floors was broken up, the wallpaper had loosened on the walls due to moisture seeping through the walls, the lavatories and sinks were chipped, and the screen doors were in bad shape. We do not attempt to list all of the testimony relating to the state of dilapidation *47 of the building but suffice it to say that we are convinced from the petitioners' own testimony that the building was in a dilapidated and run-down condition, not only when work commenced but when purchased. At the time the petitioners acquired the property, the first floor was occupied by a grocery store and a confectionery, and on the second floor were four apartments. The confectionery vacated shortly thereafter. To provide the grocery adequate business space and to meet the needs of the new tenant who operated a cafe and ice cream parlor, certain work became necessary. The petitioners then employed a contractor on a cost-plus basis to perform certain work on the building. This oral contract was to include, and did include, all work and materials used by the contractor from the commencement of work in 1946 to the end of the job in 1947. A total of $10,170.86 was paid the contractor pursuant to this contract, and $3,410.87 was paid by petitioners to others for supplies and labor in connection with the same work being performed. The petitioners testified at various times concerning "the contract" and "arriving at a final balance on the contract" when the work was completed. This *48 refutes petitioners' testimony that the work done was a series of small jobs which were not contemplated as an over-all plan. We are convinced that all of the money expended was pursuant to an over-all plan to recondition a dilapidated building into an efficient business building. The fact that the property was greatly improved as a business building by the work performed is borne out by the increased rental income subsequent to the completion of the work. Total gross rental on July 1, 1946 for the property was $160 per month. On July 1, 1947, or after completion of the work, total rental rose to $315 per month. We realize that part of the expenditures was for work that could ordinarily be characterized as repairs when taken separately. We cannot separate the items here, however. Each item of expense was an integral part of the over-all permanent betterment of the building and must be considered a part of the entire capital investment therein. I. M. Cowell, supra; Home News Publishing Co., supra; Joseph Merrick Jones, 24 T.C. 563. The third issue in the consolidated cases is whether petitioners expended $3,500 from 1938 through 1945 for *49 capital improvements to their Calvert Street property. Some improvements were probably made between those years but the petitioners presented no facts upon which we could fix any amount. One of the petitioners testified that the figure, $3,500, was "just an approximation." There was some testimony concerning new cabinets, new roof, new stairway, insulation and redecorating but no attempt was made to find or produce canceled checks or the contractors who had performed the work. Names of the contractors were known but none of them were contacted for records or as witnesses. We feel that the petitioners have failed to produce any evidence upon which we could base an opinion on this matter. Decisions will be entered under Rule 50.